**Clifton J. McCLELLAND, et al.**

v.

**Ruth MASSINGA, et al.**

**Civ. No. Y–84–794.**

United States District Court, D. Maryland.

Dec. 27, 1984.

---

Mark J. Davis, Baltimore, Md., for plaintiff.

Joseph B. Spillman, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiffs have filed this action seeking declaratory and injunctive relief under 42 U.S.C. § 1983, alleging that defendants' actions in certifying child support obligations to the Comptroller of the Treasury and intercepting tax refunds to satisfy those support obligations, in accordance with the practice of the Tax Refund Interception Program of the Child Support Enforcement Administration (CSEA), have deprived them of due process of law guaranteed by the Fourteenth Amendment. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3), which provides for original jurisdiction of all actions brought under 42 U.S.C. § 1983.

Plaintiffs are six individuals whose tax refunds have been intercepted to satisfy outstanding child support obligations under the state's Tax Refund Interception Program (TRIP) codified in Md.Code Ann.Art. 88A § 59(e). Under the terms of that program, the CSEA may certify to the Comptroller of the Treasury the name of any person who is 60 days delinquent in child support payments as required by a court order. At the time of certification, the affected taxpayer is notified of the certification, which contains the name of the obligor, the social security number, the amount in arrears, address, case number, and the name of the obligee. COMAR 07.07.02.-02D. The notice advises the obligor of a right to request an investigation and the method of doing so. Md.Code Ann.Art. 88A § 59(e)(1). That investigation consists of a simple comparison of the taxpayer's payment record with the terms of the latest court order in effect. If the obligor is in arrears more than 8.5 times the weekly amount, the certification is upheld. The report of the investigation must be made available to the taxpayer within 30 days. COMAR 07.07.02.04C. If the certification is incorrect, it must be withdrawn immediately. An investigator may de-certify a taxpayer's name at any time. COMAR 07.-07.02.04D.

If the certification is upheld, the taxpayer's refund may be intercepted. After the intercept, the taxpayer receives notice that the refund has been intercepted and is advised that a hearing may be requested to challenge the application of the refund to the child support obligation. Also after the intercept, the obligor's spouse is notified if a portion of any refund is to be applied. Generally, if spouses file jointly, the entire refund is subject to interception; if the couple files separate or combined-separate returns, the non-obligated spouse is entitled to the portion of the refund. A couple who files jointly is informed after the intercept that they may file an amended return and the non-obligated spouse's portion of the refund will be returned.

An obligor who wishes to appeal the interception must call the telephone number on the reverse of the intercept notice

and request an appeal form. The appeal form states that an obligor may appeal only if the amount of the arrearage or the fact that there is an arrearage is contested. The notice states that appeals on grounds other than those specified will not be heard.

The appeal automatically stays the payment of the intercepted money to the requesting party. COMAR 07.07.02.05C(5). The obligor who appeals within fifteen days is entitled to a hearing before a Hearing Officer. The obligor may be represented by an attorney and may present witnesses and testimony. In the alternative, the taxpayer may ask the Hearing Officer to review the record created by documents submitted. In either case, a decision must be reached within 60 days. A taxpayer dissatisfied with the decision may seek judicial review in state circuit court and ultimately before the Maryland Court of Special Appeals. COMAR 07.07.02.05D.

Plaintiffs contest this procedure for a number of reasons. First and foremost, they assert that due process requires an opportunity for a hearing before the tax refund is intercepted. They also assert that due process is violated by the failure to provide an obligor's spouse with pre-intercept notice of certification. Finally, they claim that the notice itself is constitutionally defective because it fails to provide information concerning the possible defenses to intercept.

Defendants have moved to dismiss, or in the alternative for summary judgment, on the grounds that some of the plaintiffs' claims are moot, that other plaintiffs lack standing, that the Court should abstain to let the state proceed, and that the plaintiffs have failed to join necessary parties. Defendants have also moved for summary judgment on the merits, claiming that as a matter of law the process provided by the state system is sufficient to satisfy the requirements of due process. Plaintiffs have filed an opposition and cross-motion for summary judgment. The Court will address the preliminary matters before proceeding to determine the case on the merits.

## I. MOOTNESS

Defendants have asserted that the claims of Joseph Pringle and Robert and Lillie Jones are moot because these plaintiffs have now received their tax refunds. Joseph Pringle received notice of certification in December, 1983, and immediately requested an investigation. Before the results of the investigation were available, he joined in filing this lawsuit. His refund was intercepted to partially offset a claimed arrearage of $1,306.38, but was returned to Pringle when the investigation revealed that the payments were less than 60 days in arrears. Robert and Lillie Jones allegedly received no notice of certification, but were notified on February 24, 1984, that their tax refund had been intercepted. The Jones' immediately appealed, and their refund was eventually released because the child support payments were less than 60 days in arrears.

Defendants have alleged that because the refunds were returned to these three plaintiffs, they have no legally cognizable interest in the outcome of the case. Thus, they argue, the federal court lacks jurisdiction to decide the case, because it cannot grant relief or affect the rights of these litigants. *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

Plaintiffs claim that the injury inflicted on Pringle and the Jones' is "capable of repetition, yet evading review," *Harris v. Bailey*, 675 F.2d 614, 616 (4th Cir.1981), *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973), and thus is not moot. Plaintiffs have referred this Court to cases which hold that the return of garnished funds did not moot a due process challenge to a state's post-judgment attachment procedure, *Harris v. Bailey*, 675 F.2d at 614, *Finberg v. Sullivan*, 634 F.2d 50, 55–6 (3rd Cir.1980) (en banc). *See also Reigh v. Schleigh*, 595 F.Supp. 1535 (D.Md.1984) (Miller, J.). In fact, another case concerning a similar federal-state tax refund intercept program has held that the return of an intercepted tax

overpayment did not moot plaintiff's claims for injunctive and declaratory relief, *see Coughlin v. Regan*, 584 F.Supp. 697 (D.Me. 1984) (Cyr, J.).

It is unnecessary for this Court to decide the issue of mootness with respect to these plaintiffs, however, because the Court finds that there are other plaintiffs with live claims that must be addressed, a decision that will affect Pringle and the Jones' regardless of the decision with respect to the mootness of their claims. The Court will therefore refrain from any decision in that regard.

## II. STANDING

Defendants have also asserted that four of the plaintiffs lack standing to contest the validity of the state procedures. According to the defendants, these plaintiffs have no personal stake in the outcome, *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975), because they cannot point to a "distinct and palpable injury fairly traceable to the conduct challenged in the litigation," *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Defendants make this claim with respect to plaintiffs June McClelland and Lillie Jones because these women allegedly would not have been entitled to a tax refund even absent the operation of the state intercept program. June McClelland apparently had no taxable income in 1983; she filed a joint tax return with her husband, however, and the two were entitled to a joint refund of $465.20 which was intercepted. Lillie Jones apparently did earn taxable income in 1983. She filed a combined-separate return with her husband which showed that while Robert Jones overpaid his taxes by $398.92 in 1983, Lillie Jones underpaid her taxes by $6.78. The Jones' were jointly entitled to a refund despite the fact that Lillie Jones, if filing singly, would not have received a refund. Defendants assert that these two women "can, at most, request as relief any portion of a tax refund which would be due to them if they had filed separate returns."

■ The fact remains, however, that these two women did not file separate returns. By combining their returns with those of their husbands, they became part of a tax-paying unit. Different tax rates may apply to those who are married filing jointly or married filing combined-separate returns than would apply to those filing separately. More importantly, the refund check would be issued to both husband and wife jointly, regardless of the type of return which is filed. Even a wife who would not be entitled to a refund in her own right may have a property interest in the refund issued to her husband and herself, jointly. These plaintiffs have been injured by the deprivation of their refund and have standing to contest the constitutionality of that deprivation.

Defendants also claim that Clifton McClelland and David Alloway have no standing to contest the state procedures because they have not alleged that the interception of their tax refunds was improper. If the plaintiffs were actually sixty days in arrears in their child support payments, the defendants argue, they have suffered no actual injury caused by the state's procedures. Thus, because different procedures would not change the fact that their tax refunds were intercepted, and because plaintiffs do not dispute that they are indeed delinquent in child support payments, they have no personal stake in the outcome of the litigation.

■ Defendants' argument ignores the fact that the right to due process is "absolute" in the sense that it does not depend on the merits of a claimant's substantive assertions. *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978). The Supreme Court has held that "because of the importance to organized society that procedural due process be observed, the denial of due process should be actionable for nominal damages." *Carey*, 435 U.S. 266, 98 S.Ct. at 1054. And in *Fuentes v. Shevin*, 407 U.S. 67, 87, 92 S.Ct. 1983, 1997–98, 32 L.Ed.2d 556 (1972), the Court observed:

To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense on the merits. It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods.

To hold that actual monetary injury is required before a plaintiff may have standing to challenge a state procedure would contradict the Supreme Court's clear holding that such injury is not required to recover for a due process violation. Where due process is denied, the injury is found not only in the ultimate taking but also in the failure to provide the proper procedures.

■ Furthermore, both McClelland and Alloway may indeed benefit from procedures which would help to determine the accuracy of the state's findings. McClelland has already challenged the amount of the arrearage, one of the factors which is used in the state's decision to certify. Both McClelland and Alloway have standing to challenge the state's procedures in taking their property, regardless of the fact that their refunds may have been legitimately subject to interception.

## III. ABSTENTION

Defendants' third claim is that this Court should abstain from any decision in this case because (1) there are ongoing state proceedings to enforce the payment of plaintiffs' court-ordered child support obligations, (2) there are unsettled questions of law, and (3) litigation in this Court would be duplicative of state proceedings. This Court is not persuaded by these arguments.

■ Defendants have not pointed to any unsettled question of state law which would require abstention in favor of a state court under the *Pullman* doctrine, *see Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Defendants allege only that the application of state administrative and judicial remedies may resolve the plaintiffs' claims without the need for federal court intervention. This suggestion is tantamount to a requirement that state remedies be exhausted before a § 1983 action may be maintained. That view has been rejected by the Supreme Court. *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Absent some unclear question of the interpretation of state law which requires state court resolution, *Pullman* abstention is not appropriate.

Nor have the defendants established the requirements for abstention under the *Younger* doctrine. In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court found that federal courts should not interfere with ongoing state criminal proceedings. That doctrine has been extended to foreclose federal intervention in other types of state enforcement proceedings, whenever a state has a strong interest in the subject of the enforcement proceedings. *See Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). However, the Supreme Court has recently indicated that abstention may not be appropriate where, as here, the ongoing state proceeding is administrative, *see Hawaii Housing Authority v. Midkiff*, —— U.S. ——, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). Furthermore, *Younger* abstention is only appropriate where there is an opportunity to present the federal constitutional claims in the ongoing state proceedings. Plaintiffs here would not have such an opportunity to present their constitutional claims in these state proceedings. Appeals to the Hearing Officer are allowed on only two grounds—that the arrearage does not exist, or that the arrearage does exist but in a lesser amount than is indicated. The Hearing Officer is not specifically authorized to address constitutional claims or offer

relief. Under these circumstances, *Younger* abstention would not be appropriate.

■ This litigation is not duplicative of any ongoing state litigation. There are no claims pending in state court which challenge the constitutionality of this state program. Granting plaintiff's request for relief will not result in a substantial interference with the state's strong interest in enforcing the payment of child support obligations. The only issue here is whether the state's procedures to enforce those payments are proper, and the Court will not abstain from addressing that issue.

## IV. FAILURE TO ADD NECESSARY PARTIES

■ As a final preliminary matter, the Court will dispense with the defendants' argument that the plaintiffs' case should be dismissed for failure to add necessary parties. Defendants claim that Margaret McClelland and Judith Alloway, the ex-spouses who are entitled to receive the child support payments, are indispensable parties in the present case. As the sole potential beneficiaries of the tax refund intercepts, they may have an interest in the outcome of this litigation, it is argued. For these women to be indispensable parties, their interest must be such that a final judgment would directly affect that interest and an equitable decree could not be framed in their absence. *Shields v. Barrow*, 17 How. 130, 139 (1854); *see also Provident Tradesmens National Bank and Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968) (*Shields* formula "still valid today"). Such is not the case here where there is a challenge to the procedural system used by the state. A final judgment in this Court may affect the notice and hearing procedures used by the state but will have no effect on whether these women are ultimately entitled to benefits. A decision by this Court will not prejudice their interest in recovering overdue child support payments. It may change the state administrative process used for that recovery, but such a change would prejudice only the state.

## V. MERITS

Having dispensed with the preliminary matters raised in the defendants' motion for summary judgment, the Court must now address the substance of the plaintiffs' due process claims. Plaintiffs have argued (1) that the non-obligated spouse has a constitutional right to a pre-intercept notice of possible deprivation, (2) that the notice of intercept should contain a list of the possible defenses to the intercept, and (3) that a hearing should occur before the intercept actually takes place.

There is no doubt that the interception of their tax refunds deprived plaintiffs of a protected property right, and that the due process guarantees of the Fourteenth Amendment are implicated. The Court must then determine whether the state procedures satisfy those due process guarantees.

Plaintiffs have argued that the non-obligated spouse, who may file jointly with her husband and thus have her portion of any refund intercepted, is entitled to a notice of certification similar to the notice received by the obligor. While it is true that notice is mandated before property may be taken, the state would confront significant difficulties in providing non-obligated spouses with notice. The Child Support Enforcement Administration has no record of the existence of non-obligated spouses. It is virtually impossible for the CSEA to determine, before the actual filing of tax returns, which obligors have remarried and which obligors will choose to file combined returns with their spouses. Thus, it is simply not practical to require notice to be sent directly to the non-obligated spouses when their existence cannot be ascertained prior to the filing of tax returns. *See Nelson v. Regan*, Ruling on Remedy and Final Order, C/A No. N–82–137 (D.Conn. April 22, 1983).

■ Due process requires some form of notice to the non-obligated spouse whose portion of a refund may be taken. *See Coughlin v. Regan*, 584 F.Supp. 697 (D.Me.

1984) (Cyr, J.). Notice of the possibility of interception of a spouse's portion of a refund could easily be included in the notice given to the obligated spouse. Parties should be made aware of their opportunity to escape interception of the spouse's refund by filing combined-separate or separate returns. Notice could then be given directly to the non-obligated spouse as soon as the CSEA becomes aware of the existence of a spouse whose refund might be affected.

Other courts have considered the necessity for notice to non-obligated spouses whose portion of a tax refund may be intercepted. In *Coughlin v. Regan*, the court held that despite logistical difficulties, notice should be provided to non-obligated spouses before interception. The court indicated that the requisite notice could be provided to the spouse in the notice sent to the obligor. Notice to the obligated spouse containing information about the possibility of interception of joint refunds and the method of avoiding it may satisfy the due process requirement. In *Nelson v. Regan*, Ruling on Remedy and Final Order at 6, another case concerning the constitutionality of a federal-state interception program, the court found that the notice to the obligated spouse should contain notice of the right of the non-obligated spouse to receive his/her portion of a tax refund by filing appropriately.

Here, the notice should state clearly that if spouses file jointly, their refund may be intercepted in its entirety. On the other hand, if the spouses file separate or combined-separate returns, the non-obligated spouse may receive his or her portion of a refund. Such notice, included with the notice of certification, would meet the constitutional requirements without imposing additional burden on the state.

Plaintiffs have also argued that the notice of interception should contain information concerning all possible defenses to the interception. At present, the certification notice says nothing about possible defenses, simply advising the obligor of the right to request an investigation and of the

method of doing so. COMAR 07.07.02.02D. The second notice is sent within fifteen days of the intercept of the tax refund, and informs the obligor of the right to appeal and the method of doing so. The reverse portion of the notice advises that the obligor may appeal to the CSEA and provides a telephone number. The appeal notice is received only by those who call that number and request an appeal. The reverse portion of the notice states that "[a]n appeal may only be made on the basis that: you do not believe that you have a support obligation arrearage or you believe the amount of the arrearage is less than the amount of the tax refund intercepted by the Comptroller." An obligor who has another objection to the intercept is discouraged from pursuing it by the final sentence on the front side: "Appeals based on other than the reasons, which are specified in the law, will be denied."

This language is misleading. It may discourage those with valid appeals from pursuing their right to appeal. For example, Robert Jones and Joseph Pringle had their refunds returned because they were less than 60 days in arrears, an objection not listed as one of the grounds for appeal. Such a misleading form of notice violates the constitutional due process guarantee.

■ The need for the notice to contain a list of all possible defenses to comply with due process requirements is another question altogether. Adequate notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Several courts in federal tax refund intercept cases have held that due process requires a pre-deprivation notice which specifies the possible defenses and the procedures for asserting those defenses. *Nelson v. Regan*, 560 F.Supp. 1101, 1107 (D.Conn.1983), *Marcello v. Regan*, 574 F.Supp. 586, 598–600 (D.R.I. 1983), *Coughlin*, at 710–11.

Given the factual nature of the disputes which could arise concerning these arrearages, however, it would be very difficult for the state to anticipate all possible defenses and list them. Every case may be entirely different, and any list of possible defenses could fail to include some defenses. Such a list would run the risk of always being misleading to someone, and thus increasing the risk of an erroneous deprivation. The better procedure would include in the notice complete information about the fact of, and reasons for, the interception, the availability of a hearing, and the procedures which will be followed at that hearing. Enough information should be provided so that each obligor will be able to formulate defenses based on the facts of the particular case. A more detailed list may be desirable, although not constitutionally required. However, any list of suggested defenses should be framed as mere suggestions to avoid the misleading effect of an "all-inclusive" list.

The dictates of due process are determined according to the *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), balancing test, which requires consideration of three distinct factors:

first, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

424 U.S. at 335, 96 S.Ct. at 903.

■ Applying that same test, the Court finds that the notice as it is now given violates due process because it increases the risk of erroneous deprivation by foreclosing valid appeals on grounds other than those listed. A change in the content of that notice would impose only a slight burden on the state, and thus due process requires that change. However,

due process does not require the state to anticipate and list all possible defenses. It would be burdensome for the state to compile an all-inclusive list which could be misleading despite the care with which it is compiled. It is sufficient if the notice clearly states the basis for the action against the taxpayer and outlines the factors which will be considered at a hearing, allowing the taxpayer to prepare a defense and present whatever objections are available.

■ Plaintiffs' final objection to the program as it now operates is that the state fails to provide a hearing before the interception takes place. Due process has generally been held to require pre-deprivation notice and hearing as a check on the possibility that a wrongful deprivation will occur. Defendants argue that the reasoning of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), holding that a post-deprivation hearing was sufficient to satisfy due process when a pre-deprivation hearing was impractical, should apply here. However, in *Parratt* the state action complained of was random, unauthorized, and not the result of an established government practice. The interception of tax refunds at issue here is not random or unauthorized; it is the result of a rather sophisticated state program. The state authorizes the taking of tax refunds and knows exactly when such taking will occur. Thus, the *Parratt* analysis is not applicable.

Other courts considering the federal-state tax refund intercept program have held that due process requires a hearing before intercept. *See, e.g., Nelson,* 560 F.Supp. at 1108, *Marcello,* 574 F.Supp. at 597. The *Mathews* language requires a pre-deprivation hearing. Taxpayers have a significant interest in their tax refunds. "Even if the burden of an unjust offset is not as great as that of the loss of welfare benefits for those on the very margin of subsistence, as in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), it is significant. A temporary depri-

vation may create a substantial burden."
*Nelson,* 560 F.Supp. at 1108.

Under the current system the risk of erroneous deprivation is substantial. Examining a similar system in the *Marcello* case, the court noted:

> The risk of erroneous deprivation through the current procedures is substantial ... The Bureau requisitioned the diversion based mainly upon evaluation of its own records—an evaluation which was, by its very nature, perfunctory. Judicial review was not available. In addition, the initial letter, while allowing room to quibble about the exact amount owed, seemed plainly to indicate that the interception of the addressee's refund was already a foregone conclusion. Given the high risk of undeserved deprivation and the realistic potential for disruptive impact, the probable value of additional safeguards is great.

574 F.Supp. at 597. In this case the CSEA makes the decision to certify based on an examination of its own records. The entire process is apparently computerized, and involves a simple comparison of payments with the terms of the most recent court order. At that point, no review is available, although the taxpayer may request an investigation. That investigation, like the evaluation in *Marcello,* is rather perfunctory.

The government's interest in enforcing the payment of child support is admittedly great, and additional procedural safeguards would probably increase the administrative costs of the state's tax refund intercept program. Such additional safeguards are nevertheless required by the Constitution. *Marcello,* while admitting that the government's interest in the federal-state tax intercept program was "undeniably significant," and that additional safeguards would lead to increased administrative costs and burdens, held that a pre-deprivation hearing was required, noting that although "the tax return necessary to catalyze the refund apparatus cannot itself be filed until January 1,"

the procedural steps needed to eradicate the taint of unconstitutionality could, in all probability, given a reasonable degree of effort and efficiency on the State's part, be completed before the time that the Service would normally refund or transfer overpayments.

574 F.Supp. at 597.

*Nelson,* 560 F.Supp. at 1108, held that a pre-deprivation hearing was required to provide due process to those whose names were certified under the federal TRIP program, noting that a pre-deprivation hearing was not impracticable and would not impose a great administrative burden on the government.

A pre-deprivation hearing in the present situation would be neither impractical nor overly costly. The state of Maryland already provides a post-deprivation hearing process which, if done earlier, would satisfy all requirements of due process. The additional cost of holding that same hearing earlier is minimal. The state may also gain in efficiency what it may lose in monetary terms. As plaintiffs point out, the earlier determination will allow the funds to be distributed to child support payees at an earlier date. Under the current system, an administrative appeal stays the distribution of intercepted refunds to the obligees. Requiring a pre-deprivation hearing will not impair the government's function in collecting child support payments.

The state has made some effort to provide a pre-deprivation determination to reduce the possibility of error by providing that the obligor may request an investigation before the interception. Although the investigating officer does have the authority to eliminate names from the list of certified individuals when the circumstances warrant it, a fact that the *Marcello* and *Nelson* courts found crucial, the investigation simply does not eliminate the need for a hearing. The court in *Marcello* found specifically that a review based on written submissions was inadequate, 574 F.Supp. at 598, and this Court agrees with that conclusion. The investigation which the state provides here does not even allow for

**568**

written submissions by the affected individuals. It is simply a comparison of state payment records with required payments, which does not consider the numerous factors which would contribute to an erroneous deprivation.

The fact that the taxpayer can contest the underlying child support obligation in the court which ordered the child support payments does not eliminate the need for a pre-interception hearing. The procedural protections available before certification are not a sufficient substitute for the constitutionally required procedures at the time of interception. At that point, the obligor can assert a whole new list of defenses to the interception which are irrelevant to the underlying child support order. For example, the obligor may assert that the payments are not at least sixty days in arrears, or that an error in computation has occurred. A hearing must be held before the interception in order to consider those objections, which could not be considered in contesting the underlying support obligation.

The state's current notice and hearing procedure does not comport with the requirements of due process. Due process requires a fair notice of the possibility of interception and an opportunity to contest that interception before it occurs. Defendants' motion to dismiss or in the alternative for summary judgment is therefore denied. Plaintiffs' cross motion for summary judgment will be granted as indicated in this Memorandum.