Ronald ANDERSON, Peggy A. Campbell, James S. Campbell and Paul A. Jenkins, Appellants,

v.

John F. WHITE, Jr., Secretary, Department of Public Welfare; Joan Kravitz, Child Support Offset Coordinator, Delaware County Domestic Relations, individually and in their official capacity, Appellees.

No. 89–1275.

United States Court of Appeals, Third Circuit.

Argued July 24, 1989

Decided Nov. 6, 1989.

O. Randolph Bragg (argued), UAW–GM Legal Services Plan, Newark, Del., for appellants.

Claudia M. Tesoro (argued), Deputy Atty. Gen., Calvin R. Koons, Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Philadelphia, Pa., for appellee John F. White, Jr., Secretary, Dept. of Public Welfare.

Steven R. Sparks (argued), Eckell, Sparks, Levy, Auerbach, Monte & Moses, Media, Pa., for appellee Joan Kravitz, Child Support Offset Coordinator, Delaware County Domestic Relations.

Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge, and WOLIN, District Judge *.

OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellants Ronald Anderson (Anderson), Paul Jenkins (Jenkins) and James Campbell (Campbell) are fathers who have an obligation to support their children under Pennsylvania law.[1]  Because Pennsylvania

---

* Hon. Alfred M. Wolin, District Judge of the United States District Court for the District of New Jersey, sitting by designation.

1.  Peggy Campbell is the wife of James Campbell and is a named party in the present appeal, but she has no parental obligation to the children whom her husband is under state court order to support, and it appears that she is not involved in any issue in dispute here.  The assertions and arguments made in the Brief for Appellants do not relate to her or her situation.  Appellants appear to have conceded that the rights of non-obligated spouses are not at issue in this litigation and that Peggy Campbell can be dismissed

court records showed they were delinquent in meeting their obligations as embodied in state court orders, that state sought to intercept the fathers' federal tax refunds and apply them to their child support delinquencies, pursuant to federal statute and the state's Tax Refund Intercept Program (TRIP). The fathers challenged the state's operation of its tax intercept program in district court on due process grounds. The district court granted summary judgment to appellees John F. White, Jr. (White), Pennsylvania's Secretary of Welfare, and Joan Kravitz (Kravitz), legal coordinator in Delaware County. White and Kravitz are the officials responsible for administering TRIP—White generally throughout Pennsylvania and Kravitz locally in Delaware County. The fathers appeal, contending that White and Kravitz failed to provide a program that met the due process requirements of notice and fair hearing.

On the notice issue, we conclude that summary judgment against the fathers in favor of both White and Kravitz was proper. On the hearing issue, summary judgment against Anderson and Jenkins in favor of both White and Kravitz was also proper, but it was not proper against Campbell as to appellee Kravitz. Therefore, we will affirm the district court's judgments against Anderson and Jenkins, but we will vacate its judgment and remand with respect to Campbell on the hearing issue. In particular, we hold that the district court should have considered whether Kravitz denied Campbell his due process right to a timely hearing and a timely written decision on the propriety of intercepting his tax refund and applying it against any delinquent child support he might owe.

as a party. *See* Brief for Appellee White at 3 n. 1 (citing to Reply Brief for Plaintiffs in Support of Motion for Partial Summary Judgment and to Reply Brief for Plaintiffs in Support of Plaintiffs' Motion for Summary Judgment and in Response to Defendant White's Cross Motion for Summary Judgment). Appellants do not challenge this assertion in their Reply Brief. Consequently, we will not further consider Peggy Campbell's appeal.

**2.** DPW has the authority to implement a tax refund intercept program under 23 Pa. Cons.

I.

A.

TRIP is a federal program designed to aid state and local governments in collecting delinquencies from parents who fail to meet state court orders enforcing the parents' state obligations to support their children. State and local governmental units administer the program in cooperation with the United States Internal Revenue Service (IRS). Under TRIP, federal income tax refunds due persons who owe past-due child support can be intercepted by the IRS and ultimately sent instead to the state in which the children live. The state can then apply the refund money against welfare benefits previously paid to the delinquent's children or distribute it to the person who has lawful custody of the children. *See* 26 U.S.C.A. § 6402(c) (West 1989); 42 U.S.C.A. § 664 (West Supp.1989); 26 C.F.R. § 301.6402–5 (1988); 45 C.F.R. §§ 302.60, 303.72 (1988). In Pennsylvania, the Bureau of Child Support Enforcement (state bureau), a division of the Department of Public Welfare's (DPW's) Office of Fraud and Abuse Investigation and Recovery, formally administers TRIP.[2] White is Secretary of the DPW.

The state bureau has contracted with the Domestic Relations Sections of Pennsylvania's Courts of Common Pleas. Courts of Common Pleas, or their subdivisions, have jurisdiction over child support matters and have territorial jurisdiction over the counties in Pennsylvania. *See* Pa.R.Civ.P. 1910.1–1910.4; 42 Pa.Cons.Stat.Ann. §§ 901, 931, 951–952 (Purdon 1981 & Supp. 1989). The Domestic Relations Sections of

Stat.Ann. § 4307 (Purdon Supp.1989). DPW's bureau, as the Pennsylvania agency formally responsible for TRIP (the so-called state IV–D agency), is guided by the procedures in the State Plan for Support Collection, *see* Joint Appendix (App.) at A–305, and in Action Transmittal OCSE–AT–87–6 (July 9, 1987), from the United States Department of Health and Human Services, Office of Child Support Enforcement (federal office), to state bureaus administering child support enforcement plans. App. at A–57.

those courts are responsible for the day-to-day administration of TRIP. Joint Appendix (App.) at A–309–10. Kravitz is the Child Support Offset Coordinator of the Delaware County Domestic Relations Section (local agency) and is responsible for administering TRIP in that county.

TRIP procedures begin when the local agency identifies a parent who is past-due in his or her child support in welfare cases by $150 or more, and in non-welfare cases by $500 or more. 45 C.F.R. § 303.72. The local agency submits the name and social security number of the delinquent parent to the state bureau. It then relays the data to the United States Department of Health and Human Services, Office of Child Support Enforcement (federal office). *Id.* The federal office then forwards this information to the IRS, and it checks to see whether the parent is entitled to a tax refund. If a tax refund is due, the IRS intercepts the refund and begins the process of having this money refunded to the state. 26 C.F.R. § 301.6402–5. Normally the interception process is not completed until after the parent said to owe support has been given an opportunity to contest that fact in local administrative proceedings. Indeed, the TRIP statute and regulations require that he or she be sent a pre-offset notice before a parent's tax refund is actually intercepted and applied to his or her child support obligation. *See* 42 U.S.C.A. § 664(a)(3)(A); 42 C.F.R. § 303.72(e). If the parent makes no objection or if the objections are finally dismissed, the tax refund is sent to the local agency for application against the taxpayer's delinquent support obligation.

Under the federal statute and regulations, the pre-offset notice must inform the parent that his or her tax refund may be withheld to pay delinquent court-ordered child support. It must also inform the parent of the right to obtain administrative review through the local agency.[3] In Pennsylvania, as elsewhere, the state bureau has the option of sending out its own notice or of permitting the federal office to send a pre-offset notice on the state's behalf. Since it does not have all the necessary addresses, Pennsylvania, like most other states, has chosen to have the federal office send the mandatory pre-offset notice. App. at A–174–75.

The state bureau is not directly involved in the administrative review of TRIP disputes. It has, however, provided instructions and procedural guidelines to the local agencies in DRS Regulatory Memo 1987–18. App. at A–30. These procedures bind the local agencies in conducting the reviews that the federal regulations require, set out at 45 C.F.R. § 303.72(f) and (g). Under the bureau's Regulatory Memo, the local official conducting the review has authority to delete or modify arrearages, and the parent is entitled to a written decision informing him or her of the local agency's decision on review and of the right to seek judicial review of that decision in the Court of Common Pleas. Brief for Appellee White at 8–9.[4] The Memo permits administrative review either by informal hearing or correspondence. *See* App. at A–178. It apparently also gives the local agency power to adopt supplemental procedures on matters it does not cover. *See id.* at A–296. Kravitz says the local agency in Delaware County has supplemented the Memo's

---

**3.** The statute states:

Prior to notifying the Secretary of the Treasury under [§ 664(a)(1) or (2)] that an individual owes past-due support, the State shall send notice to such individual that a withholding will be made from any refund otherwise payable to such individual. The notice shall also (i) instruct the individual owing the past-due support of the steps which may be taken to contest the State's determination that past-due support is owed or the amount of past-due support, and (ii) provide information, as may be prescribed by the Secretary of Health and Human Services by regulation in consul-

tation with the Secretary of the Treasury, with respect to procedures to be followed, in the case of a joint return, to protect the share of the refund which may be payable to another person.

42 U.S.C.A. § 664(a)(3)(A).

**4.** Kravitz agrees with this description of the administrative review process, except for suggesting that no written decision is required in intrastate cases. *See* Brief for Appellee Kravitz at 15. We reject that suggestion. *See also* note 11, *infra.*

procedural requirements with local practices that currently give a parent the right to inspect the agency's records, submit additional evidence and be represented by counsel. *See* Brief for Appellee Kravitz at 15. Her evidence on this point is uncontradicted.

If the local agency determines that a modification or deletion is warranted after administrative review, it submits the appropriate information to the state bureau, which in turn forwards it to the federal office. 45 C.F.R. §§ 303.72(d)(2), (f)(3), (g)(4). The federal office then contacts the IRS, and the intercept order is changed. If the individual's tax return has not yet been processed, an intercept will be avoided. If, on the other hand, an inappropriate intercept has already occurred, the refund due to the individual is restored. *Id.* § 303.72(h)(4).

### B.

Anderson, Jenkins and Campbell challenge the notice and hearing procedures for TRIP actions in connection with their tax refunds for calendar year 1987. They each received letters in October, 1987, that stated:

> The agency identified above [Delaware County DRS] has determined that you owe past-due child and/or spousal support. Our records show that you owe at least the amount shown below, and this amount will be referred to the Internal Revenue Service (IRS) for collection. Any federal income tax refund to which you may be entitled may be retained in full or partial satisfaction of this obligation.
> You have a right to contest our determination that this amount of past-due support is owed. You may request an administrative review by contacting us no later than November 27, 1987 at the address or phone number listed above. If

your support order was not issued in our state, we can conduct the review; or, if you would prefer that an administrative review be conducted in the state which issued the order, we will contact that state within 10 days after we receive your request. You will be notified of the time and place of your administrative review by the state which issued the order. All requests for administrative review must be made by contacting the agency listed above.

*See* App. at A–300, A–301, A–303.

These pre-offset notices did not provide a list of common defenses to the proposed intercepts, nor did they explain further the available administrative hearing procedures. However, all three letters did direct the father involved to contact the local agency if he desired administrative review of the preliminary intercept determination.

Anderson denied owing past-due child support. Through counsel, he contacted the local agency by letters dated November 6, 1987, and November 24, 1987. In the second letter, he requested an administrative review. *Id.* at A–302. No face-to-face hearing was held for Anderson, but his name was dropped from the tax intercept list in May, 1988. *Id.* at A–268–72. Apparently, he experienced no significant delay in getting his 1987 tax refund.[5]

Jenkins's counsel contacted Kravitz by phone to request administrative review after Jenkins received the pre-offset notice. Kravitz suggested that Jenkins should instead contact the State of Delaware to get documentation of the payments he had made. Jenkins's counsel agreed to do this and thereafter arranged for a check to be sent to the local agency for credit against his delinquency. Counsel later contacted Kravitz's office in January, 1988, to confirm her receipt of Jenkins's check. Because the check was received, Jenkins's

---

5. The record does not show when Anderson and Jenkins received their 1987 tax refunds. At oral argument, however, their counsel stated that no significant delay was involved.

Anderson also complained about the procedures surrounding the intercept of his 1986 tax refund and disputed the actual amount of past-

due child support that he owed at that time. However, he did not request administrative review for that year. His complaint about the 1986 refund is not developed or supported with facts in the record before us. Therefore, we will not consider it.

name was deleted from the tax intercept list. *Id.* at A–261–62.

Campbell sent a letter dated November 24, 1987, to the local agency requesting administrative review, *id.* at A–304, but did not get a formal reply from Kravitz's office until after the present case began in the district court. Thereafter, on April 14, 1988, a face-to-face meeting did take place. Although Campbell did not present any evidence to support his claim of error in figuring his delinquency and his TRIP status apparently did not change, he never received a written decision from Kravitz or the local agency, and no written minutes of the hearing itself were taken. *See id.* at A–279–81. Kravitz, however, claims that Campbell was aware that his TRIP status would not be modified. *See* Brief for Appellee Kravitz at 7.

### C.

Anderson, Jenkins and Campbell filed suit against White and Kravitz on January 25, 1988 in the United States District Court for the Eastern District of Pennsylvania. White and Kravitz filed separate answers, retained separate counsel and otherwise pursued their contentions separately throughout the proceedings. After discovery, Anderson, Jenkins and Campbell filed a motion for partial summary judgment on the notice issue and then another motion for summary judgment on the case as a whole. White opposed their motions and filed his own motions for partial summary judgment on the notice issue and for summary judgment on the case as a whole. Kravitz opposed the motions directed against her, but did not file motions on her own behalf.

On December 30, 1988, the district court denied Anderson, Jenkins and Campbell's two motions, but granted, *inter alia*, White's motion for summary judgment in full. App. at A–326–27. All three fathers then appealed to this Court and the case was docketed at No. 89–1089. However, upon learning that the district court's December 30 orders were not final as to the action against Kravitz, the fathers had the appeal at No. 89–1089 voluntarily dismissed

under Federal Rule of Appellate Procedure 42(b). Later, upon a joint motion and stipulation between the fathers and Kravitz, *see* Appendix for Kravitz (hereinafter Supp. App.) at KA–1–2, the district court's December 30 order was amended to grant summary judgment in favor of Kravitz, as well as White, against all three fathers. Final judgment was then entered by the clerk of the district court. *See* App. at A–329, A–330. Anderson, Jenkins and Campbell now appeal this amended final judgment.

### II.

■ The district court had subject matter jurisdiction over Anderson, Jenkins and Campbell's challenges to TRIP pursuant to 28 U.S.C.A. § 1343(a)(3) (West Supp.1989), the jurisdictional counterpart of 42 U.S. C.A. § 1983 (West 1981). It also had federal question jurisdiction under 28 U.S.C.A. § 1331 (West Supp.1989). Anderson, Jenkins and Campbell assert that we have appellate jurisdiction pursuant to 28 U.S. C.A. § 1291 (West Supp.1989) because the order of the district court that granted summary judgment to White and Kravitz was a final order as to both.

Kravitz challenges our appellate jurisdiction, and we will discuss that challenge before proceeding to the merits of the due process issue. As stated above, the district court's December 30 order did not grant Kravitz summary judgment. After a premature appeal was voluntarily dismissed, Anderson, Jenkins and Campbell reached an agreement with Kravitz to seek jointly an amendment of the order that would grant summary judgment for Kravitz. They so stipulated and, on the basis of that stipulation, the district court amended the December 30 order to grant Kravitz, as well as White, summary judgment.

Kravitz contends that the stipulated agreement of Anderson, Jenkins and Campbell to an entry of judgment in her favor without reservation of their right to appeal waives that right. She argues that in their stipulation, the appellants exchanged their ultimate right to appeal the judgment in her favor for an immediate right to appeal

the judgment for White. According to her, "[t]he price that Appellants have paid in order to obtain a more prompt right of review [of summary judgment in White's favor] is that they have waived and forfeited their right to proceed against [her]." Brief for Appellee Kravitz at 13. Anderson, Jenkins and Campbell say that the agreement was designed "to make the intended result [of the December 30 order] complete." Reply Brief for Appellants at 17.

We do not accept Kravitz's characterization of the stipulated agreement. Before the amended judgment was entered, Anderson, Jenkins and Campbell could have pursued the merits of their case against Kravitz in the district court. After it was entered, this was no longer possible. We believe the district court's amended order did finally resolve the case, not by consent order, but by granting a disputed summary judgment to Kravitz. Cases holding that a party who freely enters into a consent judgment waives his right to appeal, *see, e.g., Clapp v. Commissioner,* 875 F.2d 1396, 1398 (9th Cir.1989) ("[a] party consenting to entry of judgment generally waives the right to appeal"), are inapplicable on this record. No consent judgment is involved here, and therefore the situation in *Clapp* is different than the one before us. Instead, the parties here tried to cure a procedural problem created when Kravitz failed to file a cross-motion for summary judgment on her own behalf, a failure that prevented the district court's original order from finally deciding the whole case. The stipulated agreement stated that the December 30 order "resolves all substantive issues." Supp.App. at KA–2.

We hold that the amended order simply granted summary judgment for Kravitz as well as White and did not constitute a consent order or waiver precluding an appeal of the judgment in favor of Kravitz. Since this judgment was final as to all parties, we have appellate jurisdiction to review it with respect to Kravitz as well as White.

Our scope of review over the district court's grant of summary judgment is, of course, plenary, and we apply the same tests that it should have used: (1) is there any genuine issue of material fact and (2) are White and Kravitz entitled to judgment as a matter of law? *See Sorba v. Pennsylvania Drilling Co.,* 821 F.2d 200, 203 (3d Cir.1987), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988).

### III.

Proceeding to the merits of this appeal, we first examine the sufficiency of the pre-offset notice informing Anderson, Jenkins and Campbell that their 1987 tax refunds could be subject to interception under Pennsylvania's TRIP. They contend that the notices sent to them were constitutionally inadequate under the Due Process Clause of the Fourteenth Amendment because they did not list common defenses to the interception and did not adequately explain the procedures available for challenging the preliminary determination that their tax refunds should be applied directly to their delinquent child support obligations.

The state bureau, ultimately headed by White, is primarily responsible for ensuring that proper notice is given to persons whose tax refunds may be diverted to meet their past due child support obligations. This responsibility is not affected by its delegation to the federal office. Thus, White had to ensure that the pre-offset notices received by Anderson, Jenkins and Campbell satisfied due process requirements.

In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court held that due process ensures "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information. . . ." *Id.* at 314, 70 S.Ct. 652 (citations omitted). The Constitution requires only a reasonable assessment of "the practicali-

ties and peculiarities" of the situation at hand. *Id.*

In *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Court considered further the information needed to provide a constitutionally adequate notice. There, despite repeated attempts, utility customers were unable to obtain information necessary to resolve a problem of seemingly unjustified double billing. The notice the customers received "simply stated that payment was overdue and that [utility] service would be discontinued if payment was not made by a certain date." *Id.* at 13, 98 S.Ct. at 1562. The Court recognized that "[n]otice in a case of this kind does not comport with constitutional requirements when it does not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified." *Id.* at 14–15, 98 S.Ct. at 1562–63. The Court held the utility's cut-off notice was not reasonably calculated to inform customers of an opportunity to present their objections to what they may have considered unjustified billing. *Id.* at 14, 98 S.Ct. at 1562–63 (quoting *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657).[6]

We believe that the pre-offset notices sent to Anderson, Jenkins and Campbell satisfy the due process requirements of *Mullane* and *Memphis Light.* These notices not only informed them that TRIP actions were pending and that their 1987 tax refunds could be intercepted pursuant to the program, but they also gave them timely advice that administrative review was available and how to go about getting it. The notices advised them that they had a right to seek review from Kravitz's local agency to correct any errors in the preliminary determination that they were delinquent in meeting child support obligations

and that their tax refunds were therefore subject to interception and application against their delinquencies. Since the notices also told Anderson, Jenkins and Campbell how to contact Kravitz, they were reasonably calculated to adequately inform them of the impending TRIP actions as well as the procedures for challenging them.

Anderson, Campbell and Jenkins argue that due process requires the TRIP notices to list commonly available defenses.[7] The Supreme Court has never required that pre-hearing notices contain a list of potential defenses or explain available hearing procedures in intricate detail in order to meet due process standards. Nevertheless, some courts have imposed such an expanded notice requirement in TRIP cases. *See Wagner v. Duffy,* 700 F.Supp. 935 (N.D.Ill. 1988); *Brown v. Eichler,* 664 F.Supp. 865 (D.Del.1987); *Smith v. Onondaga County Support Collection Unit,* 619 F.Supp. 825 (N.D.N.Y.1985); *Marcello v. Regan,* 574 F.Supp. 586 (D.R.I.1983); *Nelson v. Regan,* 560 F.Supp. 1101 (D.Conn.1983), *aff'd,* 731 F.2d 105 (2d Cir.), *cert. denied,* 469 U.S. 853, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984). In some instances, these courts have relied upon our in banc decision in *Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980) (in banc). *See Wagner,* 700 F.Supp. at 942–43; *Brown,* 664 F.Supp. at 878–79; *Nelson,* 560 F.Supp. at 1107. Other courts have refused to read such a notice requirement into the due process clause. *See Kandlbinder v. Reagen,* 713 F.Supp. 337, 340 (W.D.Mo.1989); *Knisley v. Bowman,* 656 F.Supp. 1540 (W.D.Mich.1987); *McClelland v. Massinga,* 600 F.Supp. 558 (D.Md.1984), *rev'd on other grounds,* 786 F.2d 1205 (4th Cir.1986).

In *Finberg,* we held that Pennsylvania's post-judgment garnishment procedures did not give a debtor adequate protection

---

**6.** In a footnote, the Court stated:

In essence, recipients of a cutoff notice should be told where, during which hours of the day, and before whom disputed bills appropriately may be considered.

*Memphis Light,* 436 U.S. at 14 n. 15, 98 S.Ct. at 1563 n. 15.

**7.** Anderson, Jenkins and Campbell do not contend that the state bureau has failed to follow

the notice procedures that either it or the federal office have developed. They do not argue that the federal statutory requirements for TRIP or the related regulations were violated. Instead, they base their arguments on a contention that the Due Process Clause requires more notice than present statutory and regulatory guidelines do. *See* Brief for Appellee White at 13–14.

against an erroneous or arbitrary seizure of her bank account. Because the creditor could garnish funds before the debtor received notice or an opportunity to be heard, we held that the notice of garnishment must include information about the exemptions available to protect against the garnishment of funds needed for basic necessities as well as the process a debtor could follow to claim these exemptions. We said: "Knowledge of these exemptions is not widespread, and a judgment debtor may not be able to consult a lawyer before the freeze on a bank account begins to cause serious hardships." *Finberg*, 634 F.2d at 62.

These fathers argue the TRIP pre-offset notice should have advised them of the defenses of incorrect identification of the person owing child support, absence of any court order directing payment of child support and inaccuracy in the amount of child support past due. Basically, the defenses boil down to "I don't owe child support or I don't owe that much." Anderson, Jenkins and Campbell would have the notice repeat this in legalese. We do not think this is required by due process. Those defenses should be evident to the recipient of a TRIP notice. They are thus unlike the exemptions from garnishment that we considered in *Finberg*.[8]

Moreover, since Anderson, Jenkins and Campbell received pre-offset notices well before any final action was taken to divert their tax refunds to their child support obligations, they—unlike Mrs. Finberg— had enough time to consult a lawyer and avoid an improper tax intercept. Indeed, this is what they did. The notice provided the address and phone number of Kravitz's office and advised them to call it if they wished review. They did so, and there is no evidence in the record that their 1987

tax refunds were erroneously delayed for any significant period of time. *Finberg* is not controlling.

We hold that the pre-offset notices given to Anderson, Jenkins and Campbell were constitutionally adequate, and the district court did not err in granting White and Kravitz summary judgment on this issue.[9]

## IV.

■ We next consider whether White and Kravitz were entitled to summary judgment on the hearing issue. On this issue, Anderson, Jenkins and Campbell all argue that the administrative review procedures followed in connection with their 1987 TRIP actions were constitutionally deficient.

The general principles governing analysis of the hearing issue are not in dispute. A person is entitled to a hearing before he can be finally deprived of a property interest. *Memphis Light*, 436 U.S. at 16, 98 S.Ct. at 1564; *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974). That hearing must be "timely and meaningful" to be constitutionally sufficient under the Due Process Clause. *Mathews*, 424 U.S. at 333, 96 S.Ct. at 901–02; *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

We first consider the application of those general principles to White's actions with respect to Pennsylvania's TRIP. White and the state bureau were not in charge of the administrative review process on a day-to-day basis. Instead, they contracted with local agencies such as Kravitz's to provide hearings and review in TRIP cases. *See* State Plan for Support Collection, App. at

---

8. The defenses at issue in *Finberg* were less obvious. There, post-judgment garnishment proceedings were subject to a federal exemption for social security benefits and a $300 state exemption. *See* 634 F.2d at 62.

9. The local agency in Delaware County has recently adopted revised notice procedures. Once a TRIP candidate contacts the agency to request administrative review, he is sent a more detailed

explanation of the process and a list of the most common potential defenses available. *See* App. at A–323–25. A local agency administering TRIP has every right to include a list of common defenses or a more detailed explanation of available review procedures because it believes an expanded notice is wise and fair. Its right to do so is distinctly different from its due process obligation.

A–310. Hence, White and the state bureau cannot be expected to be aware of problems that may develop in every individual circumstance.

Of course, White cannot totally delegate away to the local agency his responsibility for how the review process works in practice,[10] but he and the state bureau did provide a required framework for the local administrator's review in DRS Regulatory Memo 1987–18. It describes, in general terms, how hearings should be conducted in both intrastate and interstate cases, and it specifically requires that a written decision be issued to the parties after review has been completed.[11] *Id.* at A–39–41. Moreover, the state provides regular training seminars to local officials handling TRIP cases. *Id.* at A–188–89, A–236–37.

Despite the guidelines provided in the Memo and the other procedural protections that the local agency has adopted on its own, Anderson, Jenkins and Campbell insist that White must give Kravitz detailed guidance on the manner in which administrative review should be conducted and the exact procedures that should be followed in TRIP cases. Among other things, they suggest that administrative review in TRIP cases should include: a timely hearing before an official with the authority to make modifications and delete candidates from the tax intercept list; an opportunity to appear personally; a right to present documentary evidence challenging the initial determination; a right to be represented by counsel; a right to discover and examine the materials used in determining that past-due child support is owed; a timely written decision after review has been completed; and the possibility of appeal from unfavorable agency decisions.

Some of these suggested procedural details may indeed be required and others

may be wise. However, due process does not require White to prescribe all of them, and we believe the precise choice of hearing procedures is better left to the persons administering TRIP under the flexible balancing test the Supreme Court has prescribed. *See Mathews*, 424 U.S. at 333–35, 96 S.Ct. at 901–03 (setting out a three-part balancing test that should be used in judging due process requirements); *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (where the Court determined that a pre-termination hearing was constitutionally required before wages could be garnished but said little about the precise procedures that should be included in such a hearing). In *Mathews*, the Court observed that:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

424 U.S. at 335, 96 S.Ct. at 903.

The Court has stressed the flexible nature of due process in meeting the constitutional requirements of particular situations. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). When determining what process is due in a particular situation, the Court has recognized that "substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of ... programs that the procedures

---

**10.** In particular, White and the state bureau must ensure that the procedures mandated by the federal office and the Department of Health and Human Services in Action Transmittal OCSE–AT–87–6, dated July 9, 1987, *see supra* note 2, are followed even if some of these responsibilities have been delegated contractually.

**11.** The Memo reads:

> Decisions rendered by your staff as a result of an administrative review must be in writing and copies mailed to both parties [the custodial parent and the absent parent]. The written notice must advise that either party may seek appeal and receive a hearing by the Court. App. at A–39. This requirement makes no distinction between intrastate and interstate cases. *See* note 4, *supra*.

they have provided assure fair consideration of the ... claims of individuals." *Mathews*, 424 U.S. at 349, 96 S.Ct. at 909.

What due process does require is a "timely and meaningful" hearing. *Id.* at 333, 96 S.Ct. at 901–02; *Armstrong*, 380 U.S. at 552, 85 S.Ct. at 1191. White's Regulatory Memo to the local agencies required such an opportunity for review. App. at A–39–41. Therefore, he has met his constitutional obligation with respect to the hearing aspect of due process. We do not find persuasive the reasoning of those courts that use the Due Process Clause to establish detailed procedural requirements for agencies and officials administering TRIP. *See Wagner v. Duffy*, 700 F.Supp. at 945; *Marcello v. Regan*, 574 F.Supp. at 598–99; *Nelson v. Regan*, 560 F.Supp. at 1108–09, 1111. Instead, we conclude the state's supervision of the process that the local agency provided was constitutionally sufficient and summary judgment was proper in favor of White on the hearing issue.

■ We also conclude that summary judgment in favor of Kravitz was proper with respect to the challenges brought by Anderson and Jenkins. The review they received was "timely and meaningful" within the meaning of the Due Process Clause. After contacting Kravitz's office to begin the review process, both Anderson and Jenkins were able to resolve their disputes satisfactorily. Anderson was dropped from the tax intercept list without need for a formal administrative hearing, and Jenkins's name was deleted after he contacted the State of Delaware and paid the past-due amount of child support that he owed. There is no evidence in this record that Anderson or Jenkins suffered

any meaningful delay in receiving the tax refunds they were legally entitled to in 1987.

Campbell's situation is different, however. He did not receive a timely hearing followed by a meaningful, written decision informing him of the results of the review process in his case. A timely opportunity to be heard is at the core of the due process guarantees. *See* typescript at 20, 23. Campbell had difficulty obtaining any hearing. Through his counsel, he requested an administrative hearing in November, 1987, but Kravitz did not meet with him about his case until April, 1988, after the present action began. Although this subsequent meeting between Kravitz and Campbell may have rendered moot Campbell's request for an injunction requiring a hearing, he was still entitled to a declaration that Kravitz's prolonged delay in providing a hearing violated due process.

Although Kravitz allowed Campbell to inspect TRIP records and present evidence in his case at the belated hearing, he has not yet received a written decision from her. His right to a written decision was clearly guaranteed by the language of DRS Regulatory Memo 1987–18, which Kravitz and her local agency were required to follow. The Memo directs that "[d]ecisions rendered ... as a result of an administrative review must be in writing and copies mailed to both parties. The written notice must advise that either party may seek appeal and receive a hearing by the Court." App. at A–39. Due process requires such a notice of decision. Campbell therefore was entitled to a written decision at the conclusion of the administrative review process, no matter what Kravitz may have told him orally at the hearing.[12] Kravitz failed ·to

---

12. We note that the local agency revised the procedures to its administrative review process on July 20, 1988. *See* App. at A–321–25. Kravitz's brief states:

> The [revised] procedure provides (1) that a timely hearing will be held before an agent of the DCDRS that has authority to delete names from the TRIP list and make other modifications; (2) that the complainant may personally appear and be represented by an attorney or other agent; (3) that the complainant may present evidence; (4) that the complainant

may review materials relied on by the state and the Domestic Relations Section; (5) that the hearing officer must render a written decision shortly after the review; and (6) that the complainant may appeal an unfavorable review decision to a master of the Delaware County Court System.

Brief for Appellee Kravitz at 16 n. 1.

These revised procedures provide for a written decision. At the conclusion of the review process, each parent who disputes the TRIP

give written evidence of her decision and the entry of summary judgment in her favor was not proper against Campbell.

## V.

For the foregoing reasons, we conclude that summary judgment in favor of White was proper with respect to Anderson, Jenkins and Campbell. We therefore will affirm this aspect of the district court's judgment. We also conclude that summary judgment in favor of Kravitz was proper in the challenges brought by Anderson and Jenkins and will affirm the district court in that respect. However, summary judgment for Kravitz should not have been granted with respect to Campbell's complaint since he did not receive a timely hearing or a meaningful, written decision informing him of the results. We will modify and vacate the district court's order in that respect and remand the case for further proceedings consistent with this opinion.

---

determination made by the local agency is given an Administrative Review Form stating:

> It is the decision of Delaware County Domestic Relations Section that
> ( ) The Support Obligor should be deleted from the TRIP program.
> ( ) The Support Obligor's support arrearage should be modified but the obligor remains a TRIP candidate.
> ( ) The support obligor [sic] is entitled to no relief.

App. at A–321. One of the three possibilities is checked off by the agency in each case to inform the parent of the results in his or her particular situation. The Form also clearly informs the parent of the right to appeal this determination to the Master's level of Domestic Relations for de novo review. *Id.* A written decision in this form seems to us to satisfy due process.